FRIDOLIN KRIEGER, Plaintiff, v. MAX SCHULTZ and ALEXANDER TOPPINS, co-partners as Schultz and Toppins, and FARMERS & MERCHANTS STATE BANK of New Salem, Defendants, and FARMERS AND MERCHANTS STATE BANK of New Salem, Appellant.

(183 N. W. 1021.)

**Mortgages — second mortgage was extinguished by foreclosure, so that second mortgagee, as purchaser first foreclosure sale, was not entitled as mortgagee to demand that proceeds of insurance policy should be applied by first mortgagee to his mortgage.**

This is an action to foreclose a first mortgage on real property. The buildings situated on the realty were injured by fire, and upon adjustment of the loss the plaintiff received a draft from the insurance company for the amount thereof; he did not retain it, but endorsed it over to the mortgagors upon their promise to expend the funds in repairing the build-

ings. A second mortgagee likewise collected the proceeds of another fire insurance policy and credited the same upon its mortgage, and, thereafter, upon foreclosure of its second mortgage, became the purchaser and eventually the owner of the premises through issuance of a sheriff's deed. It is *held*, for reasons stated in the opinion, that the amount of the draft received by the first mortgagee and by him turned over to the mortgagors should not be deducted from, or credited upon, the amount due on the first mortgage.

Opinion filed June 27, 1921.

From a judgment of the District Court of Morton county, *Hanley*, J., defendant, Farmers and Merchants State Bank of New Salem, appeals.

Affirmed.

*Newton, Dullam & Young,* for appellant.

"No matter what device or shift the holder of the first lien may resort to, every attempt to evade his duty to the owner of the inferior lien will be thwarted by the law. In equity he has a lien on the particular land covered by both incumbrances only as to the amount due after applying the value of the other security in extinguishment of his debt." Union National Bank v. Moline et al, 7 N. D. 213; Citing 3 Pom. Eq. Jur. § 1414; Gotzián & Co. v. Shakman, 89 Wis. 52, 61 N. W. 304; Also 1913 Revised Codes, § 6716; The case of Sarles v. McGee, 1 N. D. 365.

The holder of the first mortgage, having knowledge of the second lien, cannot release his security on the fund on which he alone holds the lien and put the whole burden against the one on which there is a second mortgage. If the mortgagee does so, he must account to the second mortgagee for the value of the fund so released. Pom. Eq. Jur. § 396; 5 L. R. A. 276.

*Sullivan, Hanley & Sullivan,* for respondent.

"A subsequent purchaser or incumbrancer has a right to rely on the record, as to the original amount." But he takes his chances as to how much, if anything had been paid, and buys subject to the state of account as then existed between mortgagor and mortgagee, and has no better or other rights than the former in that respect." Lash v. Edger-

ton, 13 Minn. 210; March v. Lennon, 19 Minn. 75; Carson v. Cochran, 63, N. W. 1130, Minn.

CHRISTIANSON, J.   On February 2, 1915, the plaintiff loaned $1,500 to the defendants, Schultz and Toppins.   Those defendants thereupon executed and delivered to the plaintiff a first mortgage on the property described in the complaint to secure the payment of said $1,500.   The mortgage provided that the buildings should be insured.   They were so insured, and a clause attached to the policy, making the loss, if any, payable to the plaintiff.   On November 3, 1915, the defendant Farmers & Merchants State Bank of New Salem took a second mortgage on the property described in the complaint to secure the sum of $2,404.86, then due to it from the defendants Schultz and Toppins.   The plaintiff had knowledge of such second mortgage.   In November, 1916, one of the buildings situated on the real property in question was destroyed, and another partially destroyed, by fire.   After the fire and before payment was made by the insurance company, the cashier of the defendant bank saw the plaintiff, and demanded that whatever moneys the insurance company paid to the plaintiff be retained by the plaintiff and applied on the debt secured by the first mortgage so as to reduce such indebtedness. Upon the adjustment of the loss the insurance company issued a check for $606.39, payable to the plaintiff.   The plaintiff, however, did not cash the check and apply the proceeds thereof on the indebtedness secured by the first mortgage, but indorsed and turned it over to the mortgagors on their promise that they would expend such moneys in rebuilding and repairing the buildings.   The mortgagors did not comply with this agreement, although they made some repairs, and, out of the proceeds of the check, paid the plaintiff some $120 accrued interest on the mortgage. The mortgagors are insolvent.   The defendant bank contends that it made demand on the plaintiff that he retain and apply the moneys received from the insurance company on the debt secured by the first mortgage. The then cashier of the bank testified:

"I told him (Krieger), once on the street and once in the bank, not to turn over this money; that it must be applied on the mortgage, because the building is worth that much less.   He did not say anything.

"Q.   Did you see the money for the fire insurance paid to Mr. Krieger, the check?   A.   I saw Mr. Krieger sign it.   I was behind the

case in the bank at the customer's desk, and Mr. Krieger indorsed it, and that is the last I saw of it. * * *

"Q. Did you have any talk with Mr. Krieger after the check was turned over? A. I asked him why he turned the money over. He said that Mr. Schultz wanted the money to fix that building up with it.

"Q. You say that you saw Mr. Schultz sign his name to that check? A. Mr. Krieger signed it.

"Q. Did you do anything at that time? A. I shook my head at him when he turned the check over to Mr. Schultz."

This statement of transaction in the bank is corroborated by another employee of the bank, but is contradicted by the testimony of the plaintiff. The plaintiff testified that the first time he knew that the defendant bank claimed that plaintiff should have applied the money received from the insurance company on the indebtedness secured by the first mortgage was some four weeks after he received the check from the insurance company and indorsed and turned it over to the mortgagors. The plaintiff gives this version of a conversation which he claims was had between himself and an officer at the defendant bank:—

"I said: 'Why did you not tell me that before?' He said: 'We don't have to. You ought to know that yourself.'"

There was also an insurance policy on the property under the terms of which the loss was made payable to the defendant bank as its interests might appear. When the loss was adjusted the defendant bank received some $749.

The undisputed evidence is to the effect that in January, 1918, the defendant bank paid the plaintiff the full amount of interest on plaintiff's mortgage. In other words, the defendant bank paid interest on $1,500. Later, in April, 1918, the defendant bank foreclosed its mortgage on said property by advertisement, and bid the property in at the mortgage foreclosure sale for the full amount due on its said mortgage. No redemption was made. And on April 22, 1919, the sheriff's deed was issued to said bank upon its foreclosure. Subsequent to the issuance of said deed, the plaintiff brought this action to foreclose his mortgage on the property, claiming the full face amount thereof to be due. The defendant bank, as owner of the premises by virtue of the sheriff's deed, interposed an answer, wherein it challenged the right of the plaintiff to recover the amount demanded in the complaint. It asserted that the moneys paid by the insurance company to the plaintiff under the loss

payable clause and by the plaintiff turned over to the defendants Schultz and Toppins, should be allowed as a credit on plaintiff's demand in this action, and that judgment should be rendered in his favor only for the balance due upon said $1,500 mortgage, after the allowance of such credit. The trial court overruled the contention of the defendant bank, and made findings and ordered judgment in favor of the plaintiff for the full amount demanded. The bank has appealed from the judgment so entered, and the sole question presented on this appeal is whether, under the facts here involved, the contention of the defendant bank relating to the moneys paid to the plaintiff under the insurance company is correct or incorrect.

After a careful consideration of the question we are of the opinion that the contention of the defendant bank cannot be sustained. We are not dealing here with a case where the holder of the second mortgage has demanded of the holder of the first mortgage that he apply certain payments on such first mortgage or enforce the same against certain other property than that covered by the second mortgage so as to leave the holder of the second mortgage in a better position to enforce his claim. In this case, the appellant has no claim to enforce. Its claim has been extinguished, and it has succeeded to the interest of the mortgagors in the property on which plaintiff holds a mortgage. According to the undisputed testimony, the defendant bank knew that the plaintiff did not in fact received and apply the moneys paid by the insurance company. Having such knowledge, it did in January, 1918, pay to the plaintiff the full amount of interest due upon the mortgage according to its original tenor and effect. In other words, the bank paid interest upon the theory, and in effect recognized that there was due to the plaintiff the full principal sum named in the mortgage, namely, $1,500. Shortly thereafter, namely in April, 1918, the defendant bank purchased the premises at the foreclosure sale, and bid therefor the full amount then due on its mortgage, with interest and costs of sale. As a result, the mortgage of the defendant bank was wholly extinguished (§ 6721, C. L. 1913; Harvison v. Griffin, 32 N. D. 188, 155 N. W. 655), and when the sheriff's deed was issued to the defendant it became the owner of the premises, and as such it stands precisely in the same position as any other person who might have purchased at the foreclosure sale. As was said by this court in Harvison v. Griffin, 32 N. D. 188, 196-198, 155 N. W. 655, 657:

"The fact that the statute gives them (the mortgagees) the right to

purchase at their own sale and under their own foreclosure and power does not give them any greater right than any other purchaser at the sale. Whatever amount they bid is credited on the indebtedness, and, if sufficient to pay the indebtedness, operates to wholly extinguish the same and to release and satisfy the mortgage, and they then become, when a deed is issued, the owners of the premises, subject to prior incumbrances, the same as any other purchaser. If the mortgagee purchaser at such a sale had any rights more valuable as a purchaser than a third party purchaser, it would necessarily result in unfair competition at the public sale. The mortgagee after becoming the purchaser, for the full amount of the indebtedness, certainly cannot claim any rights by virtue of the mortgage, after having extinguished the same and putting himself in the same position as any other purchaser. * * * By its purchase at the foreclosure sale, the mortgagee acquired the same title which the mortgagors possessed at the time the mortgage was executed and delivered, which was a title incumbered by the prior liens. In other words, it acquired through sheriff's deed the same rights, that, and none other than the mortgagors possessed at the date of the mortgage or which were subsequently acquired by them, which was the equity subject to the prior liens. * * * The instant that appellant's liens were satisfied, its right to invoke the rule as to marshaling of securities ceased. It was no longer necessary for its protection that it should invoke such rule. The object sought thereby no longer existed. * * *

"It should be borne in mind that the appellant acquired title through the foreclosure sale, not as mortgagee, but as purchaser, and consequently, as before stated, its rights are no greater than those of a stranger, had such a third party purchased the premises.

"Appellant suggests that a court of equity may treat a mortgage as still alive where the interests of the mortgagee require this to be done. This is, no doubt, abstractly correct, but this equitable doctrine is invoked only where the equities demand that it be done. Having purchased the premises, not as a mortgagee, but as any other purchaser, a mere stranger to the mortgage, might have done, we see no tenable ground for invoking such doctrine. Furthermore, we fail to see wherein appellant's equities preponderate over those of respondent."

In our opinion this reasoning and language are directly applicable to the facts in the case at bar.

The judgment appealed from is affirmed.

ROBINSON, C. J., and BRONSON, BIRDZELL, and GRACE, JJ., concur.